IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs April 3, 2018

## STATE OF TENNESSEE v. ALANDO DESHAUN BROWN

**Appeal from the Circuit Court for Obion County**
**No. CC-16-CR-59   Jeff Parham, Judge**

_____

### No. W2017-01397-CCA-R3-CD

_____

On April 1, 2016, the Obion County Grand Jury indicted the Defendant, Alando Deshaun Brown, on two counts of rape. A jury convicted the Defendant of both counts at trial. At the sentencing hearing, the trial court merged Count 2 into Count 1 and sentenced the Defendant to eight years in the Department of Correction, with release eligibility after service of 100% of the sentence for Count 1. The Defendant filed a timely motion for a new trial, which the trial court denied. The Defendant filed a timely notice of appeal, claiming insufficient evidence to support the verdict. Based on the evidence in the record, we affirm the trial court's judgments

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and J. ROSS DYER, JJ., joined.

Joseph P. Atnip, District Public Defender, for the appellant, Alando Deshaun Brown.

Herbert H. Slatery III, Attorney General and Reporter; Katherine C. Redding, Assistant Attorney General; Tommy A. Thomas, District Attorney General; and Jim Cannon, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Factual and Procedural History

The State charged the Defendant with rape of a physically helpless victim in Count 1, and nonconsensual rape in Count 2. At trial, the State showed that on March 31, 2016, at approximately 5 p.m., the victim, Houston Brummeier, rode his bike to a bar in

Martin to watch a baseball game. After drinking approximately six beers, Mr. Brummeier met the Defendant for the first time. The two men continued to drink and discovered Mr. Brummeier's cousin was a mutual acquaintance. The Defendant invited Mr. Brummeier to his home that night for a casual gathering he was planning with his friends. Because Mr. Brummeier only had a bike for transportation, the Defendant offered to give him a ride to his house in Union City. Mr. Brummeier placed his bike in the back seat of the Defendant's car, and they drove to the Defendant's home. By the time the two men left the bar, Mr. Brummeier had imbibed approximately six beers and at least four mixed drinks.

Once the two men arrived at the Defendant's home, the Defendant offered Mr. Brummeier a 40-ounce beer. Two or three additional people arrived at the Defendant's home with marijuana. After smoking the marijuana, Mr. Brummeier fell ill and began vomiting. The Defendant's friends left, and the Defendant and Mr. Brummeier were alone in the house. Mr. Brummeier stated that he passed out unconscious and woke up some time later on the couch.

Mr. Brummeier testified that when he woke up, his pants were down, and the Defendant was performing fellatio on him. Mr. Brummeier pushed the Defendant off, told him to stop, and stated he wanted to go home. When the Defendant got upset, Mr. Brummeier tried to calm him down, offering to pray with him. After praying together, the Defendant went back to his room, and Mr. Brummeier went back to sleep on the couch.

Mr. Brummeier explained that after the offense, he did not use his phone to call a friend or to call 9-1-1 because he was afraid the Defendant would hear him on the phone and kill him. However, Mr. Brummeier conceded that he probably should have stepped outside to make a phone call for help. Mr. Brummeier also stated that he did not get his bicycle from the Defendant's car to leave because the car was locked. When Mr. Brummeier awoke the next morning, April 1, 2016, he went into the Defendant's room to wake him and ask to go home.

Mr. Brummeier asked the Defendant to drop him off at the Carey Counseling Center, where they exchanged phone numbers. Mr. Brummeier told his counselor, Natasha Edwards, about the rape. Ms. Edwards testified that Mr. Brummeier confided in her about the rape shortly after the Defendant dropped Mr. Brummeier at the counseling center. Mr. Brummeier's account of the offense that he related to her was essentially the same as his testimony. However, Mr. Brummeier testified that he sometimes had "problems with [his] memory" in general.

Mr. Brummeier then reported the offense to Union City Police Department Officer Chucky Moran on the evening of April 1. The next day, the Union City Police Department called the Defendant and asked him to come to the police station after work. When the Defendant arrived, he declined to make a statement before speaking with an attorney.

At trial, the Defendant's account of the evening mirrored Mr. Brummeier's in many ways, with a few material distinctions. First, the Defendant testified that he was unaware that Mr. Brummeier had been ill after smoking marijuana and denied knowing that Mr. Brummeier had passed out. It was the Defendant's testimony that he gave Mr. Brummeier a blanket so he could sleep on the couch, went to his own room, and fell asleep alone. He asserted that the offense never occurred and that he was asleep the whole time. Finally, the Defendant testified that after handing Mr. Brummeier a blanket for the couch, he didn't see Mr. Brummeier again until the next morning when Mr. Brummeier called his name to wake him.

Based on this evidence, the jury convicted the Defendant on both counts of rape, which the trial court merged into one count at sentencing. The trial court sentenced the Defendant to eight years in the Department of Correction, with release eligibility after service of 100% of the sentence. The Defendant now timely appeals the trial court's judgments.

## II. Analysis

In this appeal, the Defendant contends that the evidence presented at trial was insufficient to sustain his convictions for rape. The State argues that the jury as the finder of fact determined the credibility of Mr. Brummeier's testimony, and therefore there is sufficient evidence to sustain the convictions.

Our standard of review for a sufficiency of the evidence challenge is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *see also* Tenn. R. App. P. 13(e). Questions of fact, the credibility of witnesses, and weight of the evidence are resolved by the fact finder. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). This court will not reweigh the evidence. *Id.* Our standard of review "is the same whether the conviction is based upon direct or circumstantial evidence." *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)) (internal quotation marks omitted).

A guilty verdict removes the presumption of innocence, replacing it with a presumption of guilt. *Bland*, 958 S.W.2d at 659; *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). The defendant bears the burden of proving why the evidence was insufficient to support the conviction. *Bland*, 958 S.W.2d at 659; *Tuggle*, 639 S.W.2d at 914. On appeal, the "State must be afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom." *State v. Vasques*, 221 S.W.3d 514, 521 (Tenn. 2007). "A jury verdict approved by the trial judge accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the State's theory." *State v. Williams*, 657 S.W.2d 405, 410 (Tenn. 1983).

At the time of the offense, rape was defined as the "unlawful sexual penetration … of the defendant by a victim" which occurs "without the consent of the victim and the defendant knows or has reason to know at the time of the penetration that the victim did not consent[,]" or where the Defendant "knows or has reason to know that the victim is … physically helpless[.]" Tenn. Code Ann. § 39-13-503(a)(2)-(3) (2016). "Sexual penetration" is defined as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's, the defendant's, or any other person's body, but emission of semen is not required[.]" Tenn. Code Ann. § 39-13-501(7) (2016). "Physically helpless" is defined as "a person [who] is unconscious, asleep or for any other reason physically or verbally unable to communicate unwillingness to do an act[.]" Tenn. Code Ann. § 39-13-501(5) (2016).

In challenging the sufficiency of the evidence, the Defendant points to facts which he alleges undermine Mr. Brummeier's credibility. First, the Defendant argues that Mr. Brummeier could have used his phone to call a friend or 9-1-1 for help if he had been raped. The Defendant also contends that Mr. Brummeier could have "walk[ed] away" if he had been raped, even though his bicycle was locked in the Defendant's car. Further, the Defendant states that if Mr. Brummeier had actually been raped, he would not have chosen to wake his rapist and ask for a ride, nor would he have given his phone number to his rapist. Finally, the Defendant takes issue with Mr. Brummeier's delay of a few hours before reporting the offense to police.

Considering the record in the light most favorable to the State, we conclude that the evidence is sufficient to establish both that the Defendant was sexually penetrated by Mr. Brummeier without his consent, and that the Defendant knew or had reason to know that Mr. Brummeier did not consent. We also conclude that the evidence is sufficient to establish that the Defendant knew or had reason to know that Mr. Brummeier was physically helpless at the time of penetration. "The credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the evidence are matters entrusted exclusively to the jury as the triers of fact." *State v. Cribbs*, 967

- 4 -

S.W.2d 773, 793 (Tenn. 1998). Because this is a case of incompatible accounts, the jury had to make a credibility assessment between the Defendant and Mr. Brummeier. The jury determined that Mr. Brummeier was a more credible witness than the Defendant, and this court will not reweigh that determination. Because Mr. Brummeier was unconscious at the time the Defendant commenced fellatio, he was physically helpless by definition, and he could not have consented. Therefore, the evidence established the elements of the crime and supports the jury's verdict.

The trial court "correctly reflected the merged convictions on two separate uniform judgment documents" and by doing so "maintain[ed] the integrity of each of the jury's dual verdicts and accurately reflect[ed] the merger for purposes of appellate review and collateral challenges to the conviction." *State v. Berry*, 503 S.W.3d 360, 365 (Tenn. 2015). However, the "best practice is for the trial court to impose a sentence on each count and reflect the sentence on the respective uniform judgment document." *Id.* After imposing the sentence, the trial court should note in the "Special Conditions" box of the uniform judgment document of the count being merged, just as the trial court did in this case, that the count is merged with another count. *Id.*

III. Conclusion

Based on the foregoing analysis, we affirm the judgments of the trial court.

_____
ROBERT L. HOLLOWAY, JUDGE